UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

HEATHER HANEY                                                                 PLAINTIFF

v.                                               No. 5:19-CV-05108

HAIN CELESTIAL GROUP, INC.                                DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant Hain Celestial Group, Inc.'s ("Hain") motion for summary judgment (Doc. 21), brief in support (Doc. 22), and statement of facts (Doc. 23). Plaintiff Heather Haney filed a response (Doc. 24), statement of facts (Doc. 25), and brief in support (Doc. 26). Hain filed a reply (Doc. 29).[1] For the reasons set forth below the motion will be GRANTED IN PART and DENIED IN PART.

**I.    Background**

Hain is a producer and marketer of consumer-packaged goods. Haney began working for Hain as a Customer Team Logistics Director on January 2, 2013. During this time, Haney's duties focused on servicing Hain's accounts with Walmart and Sam's Club. Haney originally reported to the Senior Director, Jeffrey Bladdick, but Bladdick was promoted to Chief Customer Officer and Laura Comer became Haney's new supervisor. Bladdick was terminated in February 2017 and Comer resigned in 2017. Upon Comer's resignation, Haney and one other employee were the only remaining members of Hain's Walmart and Sam's Club team.

In late 2017, Walmart dropped "around 40%" of Hain's Sensible Portions products from its stores and caused Hain's Walmart account to lose 20-30 million dollars. Hain then hired Jacob

---

[1] Hain's original reply (Doc. 27) was stricken (Doc. 28) because it exceeded the page limit. Hain filed an amended reply (Doc. 29) which the Court has considered.

1

Rogers as a Vice President and Team Leader for Walmart and Sam's Club. Rogers determined the Walmart team needed a high-ranking, senior level position dedicated to supply chain. To fill this position, Hain conducted an external, confidential search and eventually hired David Wells. Rogers also decided to change Haney's title from Customer Team Logistics, Director to Senior Manager of Replenishment.

On May 21, 2018, Rogers informed Haney her job title would be changing to Senior Manager of Replenishment. Despite the change, Haney was informed that neither her salary nor her benefits would be affected. Five days before Rogers informed Haney her title was changing, Haney received an email from a friend with a job opening at Century Snacks. After Haney was told about the title change, she set up an interview with Century Snacks. From May 29 to June 8, Haney took a preapproved vacation. On June 8, Haney emailed Rogers and other Hain employees stating, "some things have come up that I need to take care of, so I will be out of the office through 6/22/18." (Doc. 23-5, p. 4). Haney did not request this additional time off, nor did she provide any additional information as to why she could not return to work. On June 21, Haney sent a resignation letter to Rogers stating

> While I have enjoyed my time with Hain for most of my career, the working conditions that I have endured for the last few months have become so intolerable that my health has been damaged. My doctor has recommended that I stop working at Hain. I do not believe that my contributions to Hain's success have been appreciated. Because of my recent demotion, I cannot see a future for me with Hain. I must, therefore, accept my doctor's recommendation. Please consider this letter as my resignation, effective immediately.

(Doc. 23-6). Prior to sending the email, Haney had already accepted a job with Century Snacks making $55,000 less than she was making at Hain.

Haney filed an EEOC charge for sex discrimination and retaliation on October 18, 2018. On March 22, 2019, Haney received a dismissal and notice of right to sue from the EEOC. Haney

filed a complaint against Hain in this Court on June 3, 2019, alleging sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.* Defendants filed a motion for summary judgment arguing there was no evidence to support Haney's sex discrimination claims or argument that she was constructively discharged.

## II.     Summary Judgment Standard

On a motion for summary judgment, the burden is on the moving party to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant has met its burden, the nonmovant must present specific facts showing a genuine dispute of material fact exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In order for there to be a genuine dispute of material fact, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    Analysis

To overcome summary judgment on a Title VII sex discrimination claim, a plaintiff must provide "either direct evidence of discrimination or create an inference of [discrimination] under the *McDonnell Douglas* burden-shifting framework." *Lors v. Dean*, 746 F.3d 854, 865 (8th Cir. 2014) (internal quotations and citations omitted). Direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the factfinder to infer that the attitude was more likely than not a motivating factor in the employer's decision." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993) (quoting *Ostrowski v. Atl. Mut. Ins. Co.*,

968 F.2d 171, 182 (2d Cir. 1992)) (ellipses in original); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (explaining that "direct" evidence here is not the converse of "circumstantial" evidence but instead "refers to the causal strength of the proof."). Haney cites no evidence of a decisionmaker's discriminatory attitude that is of sufficient causal strength that a factfinder could infer that the discrimination was a motivating factor in an adverse employment decision. To overcome summary evidence, she must create an inference of discrimination under the *McDonnell Douglas* burden-shifting framework.

Under *McDonnell Douglas*, a plaintiff must establish a prima facie case of discrimination. *Lors*, 746 F.3d. at 867. To establish a prima facie case of gender discrimination, a plaintiff must establish "(1) she was a member of a protected class, (2) she was qualified for her job, (3) she suffered an adverse employment action, and (4) there are facts that give rise to an inference of gender discrimination." *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007). If a plaintiff establishes an inference of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action, at which point the burden shifts back to the plaintiff to show the state reason is pretext for unlawful discrimination. *Zhuang v. Datacard Corp.*, 414 F.3d 849, 855 (8th Cir. 2005).

Haney argues she has established a prima facie case of employment discrimination because she was demoted to a Senior Manager position and was not hired, or even interviewed, for the Director of Customer Supply Chain. Although Haney's job title did change, her salary and benefits remained the same. Hain also continued to provide Haney with a car allowance of $600, despite the fact car allowances were not given to employees at the manager position. Haney argues her benefits did change because an email between Rogers and Dana Perrino, a senior manager of human resources at Hain, stated her bonus amount would change from 24% to 10-12%. (Doc. 24-

43). However, the testimony of Perrino and Haney reveal Haney's salary and benefits, including bonuses, were not changed, and she was "grandfathered" and allowed to keep her salary and benefits. (Docs. 23-3 p. 35, 23-2 pp. 81-82).

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Holland*, 487 F.3d at 645. Adverse employment action may include "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects but minor changes are not enough." *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1131 (8th Cir. 2014) (internal quotations and citations omitted). "A transfer involving only minor changes in working conditions and no reduction in pay or benefits does not constitute an adverse employment action." *Zhuang*, 414 F.3d at 854 (quoting *Ledergerber v. Stangler*, 122 F.3d 1142, 144 (8th Cir. 1997)). Because Haney was only reassigned a position and no changes were made to her salary or benefits, Haney did not suffer an adverse employment action. Haney also argues that not being considered for the director position was an adverse employment action, but this was not a change in her working conditions. Instead, the director position was a new position for which Rogers did not believe Haney was qualified.

Even if Haney could establish a prima facie case of discrimination, Hain has articulated a legitimate, nondiscriminatory reason for the action. Prior to Rogers's hiring, Walmart removed 40% of a Hain brand from its business which caused Hain to lose "20 to 30 million . . ." dollars. (Doc. 23-2, pp. 112-13). Rogers was hired to fix Hain's relationship with Walmart and evaluate if Hain had the right team structure. Rogers restructured the department to create a Director of Supply Chain position and changed Haney's title from Customer Team Logistics, Director to Senior Manager of Replenishment. The reasons for these changes were to improve relationships with Walmart and fix the issues that caused Hain's losses. Haney was not interviewed or

considered for the director position because neither Rogers nor Haney's human resources department thought Haney had the qualifications necessary for a Director of Supply Chain. Hain has articulated a legitimate, nondiscriminatory reason for the change in Haney's title and the decision not to hire Haney for the director position.

Haney, however, argues Hain's reasons were a pretext. A plaintiff can show defendant's reasons were pretext for unlawful discrimination by "showing the proffered explanation has no basis in fact or directly persuad[ing] the court that a prohibited reason more likely motivated the employer." *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015). Making rude comments and exhibiting a stereotypical attitude about gender typically do not rise to the level necessary to show pretext. *Kriss v. Sprint Commc'ns Co. P'ship*, 58 F.3d 1276, 1281 (8th Cir. 1998). Erroneous performance evaluations, general disagreements with job expectations, and poor supervision do not amount to Title VII discrimination. *Gray v. Ark. Dept. of Hous. & Urban Dev.*, 310 F.3d 1050, 1052 (8th Cir. 2002).

Haney argues Hain's proffered reasons are pretext for unlawful discrimination because Rogers's statement that the director needed a strong personality is code for wanting a male candidate, Haney had more experience with Hain, the director position and manger position were essentially the same, and Rogers's outside search demonstrates he did not want to hire a woman for the position. On one occasion Jamie Fay, Hain's Chief Customer Officer and Rogers's boss, said "see you later, guys . . . and one female" while looking at Haney, who was the only woman in the room. (Doc. 23-2, p. 87). But, Haney testified this was the only time Fay made a comment about Haney's sex or females in general and she believed the comment was said just to "separate [her] from the group." (*Id.* at 97). Haney also testified Rogers did not make any inappropriate comments about Haney's sex or females. *Id.* Haney does not demonstrate Hain's articulated

6

reasons have no basis in fact, nor would a reasonable factfinder be able to infer that the reasons are pretext and unlawful sex discrimination more likely motivated Hain's decisions. Because there are no material questions of fact and Haney has failed to establish a prima facie case of sex discrimination, Haney's sex discrimination claims are dismissed.

Haney also alleges she was constructively discharged because of her sex. If Haney could show she was constructively discharged, the discharge would be another adverse employment decision that may support a prima facie case of sex discrimination. Constructive discharge occurs "when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007) (citing *Tatum v. Ark. Dept. of Health*, 411 F.3d 955, 960 (8th Cir. 2005) (internal quotations omitted)). To establish constructive discharge a plaintiff must show "(1) a reasonable person in her situation would find the working conditions intolerable and (2) the employer . . . intended to force the employee to quit." *Id.* If a plaintiff cannot show the employer intended the plaintiff to quit, the plaintiff can prevail if "the employer could have reasonably foreseen that the [plaintiff] would quit as a result of its actions." *Wright v. Rolette Cnty.*, 417 F.3d 879, 886 (8th Cir. 2005) (internal citations and quotations omitted). A plaintiff's feelings that she was unfairly criticized or had unpleasant working conditions are not "so intolerable as to compel a reasonable person to resign." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1058 (8th Cir. 2007) (internal citations and quotations omitted). An employee must give the employer reasonable opportunity to resolve the problem before quitting. *Sanders v. Lee Cty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012).

Here, Haney has failed to establish a constructive discharge claim. Haney argues her working conditions were intolerable because she was demoted, required to report to a man who

7

had no experience with Hain, and suffered a longstanding pattern of discrimination. However, as discussed above, Haney's salary and benefits remained the same and she did not start her new job before she resigned. Further, the pattern of discrimination Haney argues consisted of her bosses' failure to invite her to lunch and dinner, include her in business conversations, ask her for updates, ask her for her opinion on team structure, and allow her to handle an office move. Haney was also asked questions about her personal life and on one occasion her boss said "[s]ee you later, guys . . . and one female" while looking at Haney. (Doc. 23-2, p. 87). Although Haney alleges these conditions were unpleasant, no reasonable jury would find these conditions intolerable.

Even if Haney could show intolerable working conditions, there are no facts demonstrating Hain intended for her to resign. Instead, the undisputed facts show Rogers kept Haney's salary the same and wanted to put Haney in a position where she could succeed. It is also undisputed that Haney did not report the intolerable conditions to Hain. Haney argues she did not complain to Hain because she believed she would be fired. But "part of an employee's obligation to be reasonable . . . is an obligation not to assume the worst and not to jump to conclusions too fast" and that does not excuse a plaintiff from at least notifying the employer. *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 419 (8th Cir. 2010) (citing *Smith v. Goodyear Tire & Rubber Co.*, 895 F.2d 467, 473 (8th Cir. 1990) (internal quotations omitted)). Because there are no material questions of fact and Haney cannot show she was constructively discharged, there is no remaining adverse employment action that she can use to establish a prima facie case of sex discrimination.

Because Haney's remaining claim arises under state law and the Court exercises supplemental jurisdiction, rather than original jurisdiction, over those claims, they will be dismissed without prejudice. 28 U.S.C. § 1367(c)(3); *Keating v. Neb. Pub. Power Dist.*, 660 F.3d 1014, 1018-19 (8th Cir. 2011).

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (Doc. 21) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED and judgment will be entered in Defendant's favor on Plaintiff's Title VII sex discrimination claims, which will be DISMISSED WITH PREJUDICE. Because the Court lacks original subject matter jurisdiction over the remaining state law claim, the motion is DENIED with respect to that claim, which will be DISMISSED WITHOUT PREJUDICE. Judgment will be entered separately.

IT IS SO ORDERED this 1st day of April, 2020.

*/s/ P. K. Holmes, III*
P.K. HOLMES, III
U.S. DISTRICT JUDGE